| | | |
|---|---|---|
| SYLVIA HAWTHORNE | * | NO. 2020-CA-0439 |
| VERSUS | * | |
| | | COURT OF APPEAL |
| NORFOLK SOUTHERN | * | |
| CORPORATION D/B/A | | FOURTH CIRCUIT |
| NORFOLK SOUTHERN | * | |
| RAILWAY; SEWERAGE AND | | STATE OF LOUISIANA |
| WATER BOARD OF NEW | * * * * * * * | |
| ORLEANS; BOH BROS. | | |
| CONSTRUCTION CO., L.L.C.; | | |
| OSCAR RENDA | | |
| CONTRACTING, INC., A | | |
| SOUTHLAND COMPANY; | | |
| JOHNSON BROS. | | |
| CORPORATION, A | | |
| SOUTHLAND COMPANY; | | |
| AND SOUTHLAND | | |
| CONTRACTING, INC. | | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2019-10648, DIVISION "D"
Honorable Nakisha Ervin-Knott, Judge
* * * * * *
**Judge Terri F. Love**
* * * * * *
(Court composed of Chief Judge James F. McKay III, Judge Terri F. Love, Judge
Edwin A. Lombard)

David A. Binegar
Tiffany R. Christian
BINEGAR CHRISTIAN LLC
4902 Canal Street, Suite 301
New Orleans, LA 70119

      COUNSEL FOR PLAINTIFF/APPELLANT, SYLVIA HAWTHORNE

Thomas J. Cortazzo
Dakota K. Chenevert
LEWIS BRISBOIS BISGAARD & SMITH, LLP
400 Poydras Street, Suite 1300
New Orleans, LA 70130

      COUNSEL FOR DEFENDANTS/APPELLEES, OSCAR RENDA
      CONTRACTING, INC.; JOHNSON BROS. CORPORATION; &
      SOUTHLAND CONTRACTING, INC.

Daniel M. Redmann
Laura L. Pousson
DUPLASS ZWAIN BOURGEOIS PFISTER WEINSTOCK & BOGART
3838 N. Causeway Boulevard, Suite 2900
Metairie, LA 70002

COUNSEL FOR DEFENDANT/APPELLEE, OSCAR RENDA CONTRACTING, INC.

Michael R.C. Riess
M. Robert C. Riess
RIESS LEMIEUX, LLC
1100 Poydras Street, Suite 1100
New Orleans, LA 70163

COUNSEL FOR DEFENDANT/APPELLEE, BOH BROS. CONSTRUCTION CO, LLC

Darryl Harrison
SEWERAGE AND WATER BOARD OF NEW ORLEANS
625 St. Joseph Street, Room 201
New Orleans, LA 70165

COUNSEL FOR SEWERAGE & WATER BOARD OF NEW ORLEANS

**AFFIRMED**
**APRIL 28, 2021**

TFL

JFM

EAL

This appeal arises from the injuries allegedly sustained by plaintiff when she tripped while walking in a construction site. Plaintiff fax-filed her petition for damages, but the hard copy of her petition was not received by the court until after the deadline set forth by La. R.S. 13:850(B). Defendants filed an exception of prescription asserting that the one-year prescriptive period for tort claims expired because the original petition was filed after the prescriptive period. Thus, the fax-filed petition faxed within the one-year period alone was insufficient. The trial court agreed, granted the exception of prescription, and dismissed the plaintiff's claims against all defendants.

After conducting our review of the revised version of La. R.S. 13:850(B), this Court's *res nova* interpretation of "delivered to" requires that the clerk of court be in receipt of the filing as opposed to being forwarded to. Accordingly, the judgment of the trial court is affirmed.

### *FACTUAL BACKGROUND AND PROCEDURAL HISTORY*

On October 10, 2018, Sylvia Hawthorne was walking from her home along Florida Avenue when she passed through the Florida Avenue Canal Construction Project. Ms. Hawthorne tripped on railroad tracks obscured by construction and sustained injuries.

On October 9, 2019, Ms. Hawthorne fax-filed her Petition for Damages against Norfolk Southern Corporation d/b/a Norfolk Southern Railway; Sewerage and Water Board of New Orleans ("S&WB"); Boh Bros. Construction Co., LLC; Oscar Renda Contracting, Inc.; Johnson Bros. Corporation; and Southland Contracting, Inc. ("Defendants"). On October 15, 2019, Ms. Hawthorne mailed the original hard-copy of her Petition to the Clerk of Court for the Orleans Parish Civil District Court via certified mail, return receipt requested. The Clerk of Court did not receive the hard-copy until October 30, 2019.

The S&WB filed an Exception of Insufficiency of Service and Citation contending that it was not the agent for service of process for the City of New Orleans. Defendants (excluding Norfolk, S&WB, and Boh Bros.) filed a Peremptory Exception of Prescription contending that Ms. Hawthorne failed to comply with La. R.S. 13:850(B) because the hard-copy of her Petition was not received by the Clerk of Court within seven days of the fax-filing. Therefore, the one-year prescriptive period for torts had run. Subsequent exceptions of prescription were filed by Oscar (filed as a singular defendant with different counsel from previous exception) and Boh Bros. During the hearing conducted by the trial court, the S&WB adopted the position of the other defendants regarding the Exception of Prescription.

The trial court granted Defendants' Exception of Prescription and dismissed Ms. Hawthorne's claims against all Defendants. Based on this ruling, the trial court held that S&WB's Exception of Insufficiency of Service and Citation was moot. Ms. Hawthorne's Motion for Devolutive Appeal followed.

### SUBJECT MATTER JURISDICTION

We must first examine whether we have subject matter jurisdiction sufficient

to hear Ms. Hawthorne's appeal. "An appellate court cannot determine the merits of an appeal unless its subject matter jurisdiction is properly invoked by a valid final judgment." *Moulton v. Stewart Enterprises, Inc.*, 17-0243, p. 3 (La. App. 4 Cir. 8/3/17), 226 So. 3d 569, 571. "The jurisprudence has required that a valid final judgment be precise, definite, and certain." *Id.*, p. 4, 226 So. 3d at 572.

"In addition to requiring that a judgment be precise, definite, and certain, the jurisprudence has required that a valid final judgment be self-contained; stated otherwise, '[o]ne must be able to determine from the judgment itself—without any reference to an extrinsic source—the specific relief granted.'" *Lewis v. B-3 Prop.*, 18-0428, p. 2 (La. App. 4 Cir. 10/24/18), 258 So. 3d 107, 109 (quoting *Baker Ready Mix, LLC v. Crown Roofing Servs., Inc.*, 15-0565, p. 2, n.1 (La. App. 4 Cir. 12/16/15), 183 So. 3d 622, 623). "'The specific relief granted should be determinable from the judgment without reference to an extrinsic source such as pleadings or reasons for judgment.'" *Lewis*, 18-0428, p. 2, 258 So. 3d at 109 (quoting *Input/Output Marine Sys., Inc. v. Wilson Greatbatch, Techs., Inc.*, 10-477, p. 13 (La. App. 5 Cir. 10/29/10), 52 So. 3d 909, 916). "Additionally, the failure to name any defendant against whom the judgment was rendered in a case with multiple defendants makes the judgment fatally defective, because one cannot discern from its face against whom the judgment may be enforced." *Input/Output*, 10-477, p. 13, 52 So. 3d at 916.

The trial court's judgment does not name Ms. Hawthorne or utilize the names of Defendants. However, the case involves a singular plaintiff and the judgment dismissed all of Ms. Hawthorne's claims against all Defendants. Thus, the specific relief granted is clearly determinable and subject matter jurisdiction is present.

3

### *EXCEPTION OF PRESCRIPTION*

The exception of prescription is peremptory. La. C.C.P. art. 927. "The function of the peremptory exception is to have the plaintiff's action declared legally nonexistent, or barred by effect of law, and hence this exception tends to dismiss or defeat the action." La. C.C.P. art. 923.

"A peremptory exception generally raises a purely legal question." *Wells Fargo Fin. Louisiana, Inc. v. Galloway*, 17-0413, p. 7 (La. App. 4 Cir. 11/15/17), 231 So. 3d 793, 799-800. A legal question requires *de novo* review. *Fornerette v. Ward*, 10-1219, p. 4 (La. App. 4 Cir. 5/11/11), 66 So. 3d 516, 520. However, "[w]hen evidence is introduced, the trial court's factual findings on the issue of prescription generally are reviewed under the manifestly erroneous-clearly wrong standard of review." *Wells Fargo*, 17-0413, p. 8, 231 So. 3d at 800. Even so, "[w]hen evidence is introduced but the case involves no dispute regarding material facts, only the determination of a legal issue, an appellate court must review the issue *de novo*, giving no deference to the trial court's legal determination." *Id.*

Generally, the "party asserting a peremptory exception of prescription bears the burden of proof." *Engine 22, LLC v. Land & Structure, LLC*, 16-0664, p. 5 (La. App. 4 Cir. 4/5/17), 220 So. 3d 1, 5. "However, if prescription is evident from the face of the pleadings, the plaintiff will bear the burden of showing an action has not prescribed." *Id.*

### *LA. R.S. 13:850*

Ms. Hawthorne contends that the trial court erroneously interpreted La. R.S. 13:850(B) as requiring the original, hard-copy of her Petition to be received by the clerk of court within seven days of the date of the fax-filing. Instead, Ms.

Hawthorne urges that once she mailed the Petition on October 15, 2019, she complied with the statute's requirements.

Ms. Hawthorne's assertions present this Court with a *res nova* issue within this Circuit and the merit of said claims are governed by principles of statutory interpretation. The Louisiana Supreme Court outlined the first steps of this process as follows:

> The function of statutory interpretation and the construction given to legislative acts rests with the judicial branch of the government. *Theriot v. Midland Risk Ins. Co.*, 95-2895 (La.5/20/97), 694 So.2d 184, 186. The rules of statutory construction are designed to ascertain and enforce the intent of the Legislature. *Succession of Boyter*, 99-0761 (La.1/7/00), 756 So.2d 1122, 1128; *State v. Piazza*, 596 So.2d 817, 819 (La.1992). Legislation is the solemn expression of legislative will and, thus, the interpretation of legislation is primarily the search for the legislative intent. *Boyter*, 756 So.2d at 1128; *Cat's Meow, Inc. v. City of New Orleans through Dep't of Fin.*, 98-0601 (La.10/20/98), 720 So.2d 1186, 1198. We have often noted the paramount consideration in statutory interpretation is ascertainment of the legislative intent and the reason or reasons which prompted the Legislature to enact the law. *State v. Johnson*, 03-2993 (La.10/19/04), 884 So.2d 568, 575; *Theriot*, 694 So.2d at 186.
>
> The starting point in the interpretation of any statute is the language of the statute itself. *Johnson*, 884 So.2d at 575; *Theriot*, 694 So.2d at 186. "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." La. Civ.Code. art. 9; *Johnson*, 884 So.2d at 575. However, "when the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law." La. Civ.Code art. 10; *Fontenot v. Reddell Vidrine Water Dist.*, 02-0439 (La.1/14/03), 836 So.2d 14, 20. Moreover, "when the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole." La. Civ.Code art. 12.

5

It is also well established that the Legislature is presumed to enact each statute with deliberation and with full knowledge of all existing laws on the same subject. *Johnson*, 884 So.2d at 576; *State v. Campbell*, 03-3035 (La.7/6/04), 877 So.2d 112, 117. Thus, legislative language will be interpreted on the assumption the Legislature was aware of existing statutes, well established principles of statutory construction and with knowledge of the effect of their acts and a purpose in view. *Johnson*, 884 So.2d at 576-77; *Campbell*, 877 So.2d at 117. It is equally well settled under our rules of statutory construction, where it is possible, courts have a duty in the interpretation of a statute to adopt a construction which harmonizes and reconciles it with other provisions dealing with the same subject matter. La. Civ.Code art. 13; *City of New Orleans v. Louisiana Assessors' Retirement and Relief Fund*, 05-2548, 986 So.2d 1 (La.10/1/07).

*M.J. Farms, Ltd. v. Exxon Mobil Corp.*, 07-2371, pp. 12-14 (La. 7/1/08), 998 So. 2d 16, 26-27, *amended on reh'g* (Sept. 19, 2008).

La. R.S. 13:850 was amended by Acts 2016, No. 109, §1, effective August 1, 2016, and provides:

A. Any document in a civil action may be filed with the clerk of court by facsimile transmission. All clerks of court shall make available for their use equipment to accommodate facsimile filing in civil actions. Filing shall be deemed complete at the time the facsimile transmission is received by the clerk of court. No later than on the first business day after receiving a facsimile filing, the clerk of court shall transmit to the filing party via facsimile a confirmation of receipt and include a statement of the fees for the facsimile filing and filing of the original document. The facsimile filing fee and transmission fee are incurred upon receipt of the facsimile filing by the clerk of court and payable as provided in Subsection B of this Section. The facsimile filing shall have the same force and effect as filing the original document, if the filing party complies with Subsection B of this Section.
B. **Within seven days, exclusive of legal holidays, after the clerk of court receives the facsimile filing, all of the following shall be delivered to the clerk of court**:
(1) The original document identical to the facsimile filing in number of pages and in content of each page including

any attachments, exhibits, and orders. A document not identical to the facsimile filing or which includes pages not included in the facsimile filing shall not be considered the original document.

(2) The fees for the facsimile filing and filing of the original document stated on the confirmation of receipt, if any.

(3) A transmission fee of five dollars.

C. **If the filing party fails to comply with any of the requirements of Subsection B of this Section, the facsimile filing shall have no force or effect.** The various district courts may provide by court rule for other matters related to filings by facsimile transmission.

D. The clerk may purchase equipment and supplies necessary to accommodate facsimile filings out of the clerk's salary fund.

(Emphasis added). Prior to the 2016 amendment, La. R.S. 13:850(B) read:

B. Within five days, exclusive of legal holidays, after the clerk of court has received the transmission, the party filing the document **shall forward** the following to the clerk:

(1) The original signed document.

(2) The applicable filing fee, if any.

(3) A transmission fee of five dollars.

(Emphasis added).

Ms. Hawthorne contends that the trial court should have interpreted "shall be delivered" contained in Section B, as forwarded to. For support, she refers to *Hunter v. Morton's Seafood Rest. & Catering*, 08-1667 (La. 3/17/09), 6 So. 3d 152, wherein the Louisiana Supreme Court interpreted the pre-revision "shall forward" language of the statute. The Court held "that to forward a document as required in La. R.S. 13:850(B), a litigant must only send the document; the sending of the document towards the place of destination is all that is required, pursuant to the clear and unambiguous language of La. R.S. 13:850(B)." *Id.*, 08-1667, pp. 5-6, 6 So. 3d at 156. Ms. Hawthorne asserts that Hunter remains good law because "shall forward" and "shall be delivered" are synonymous.

7

The Fifth Circuit examined the proper interpretation of the post-revision version of La. R.S. 13:850(B) containing "shall be delivered." *Clark v. Wal-Mart Stores, Inc.*, 18-52 (La. App. 5 Cir. 10/31/18), 259 So. 3d 516. In *Clark*, plaintiff's original copy of the petition was mailed to a P.O. Box address. The petition was signed for on July 13, 2017 (the day prescription ended), but was not stamped as filed until July 14, 2017 (the day after prescription ended). *Id.*, 18-52, p. 1, 259 So. 3d at 518. The Fifth Circuit stated, "[t]he only issue before this Court is whether plaintiff's original petition was 'delivered' to the Clerk of Court within the seven days as required by the amended version of La. R.S. 13:850 B." *Id.*, 18-52, pp. 6-7, 259 So. 3d at 521. The Fifth Circuit then searched for the generally prevailing meaning and

> considered the common and approved usage of the word "deliver." Black's Law Dictionary (6th Ed. 1990) defines "delivery" as "[t]he act by which the res or substance thereof is placed within the actual or constructive possession or control of another." The word "deliver" is defined in the Webster's II New Riverside Dictionary as "[t]o take to the intended recipient <deliver mail>." Webster's New Universal Unabridged Dictionary defines "deliver" as "to give or transfer; to put into another's possession or power; to commit; to pass from one to another.... to give out; distribute; as, deliver the mail." Deliver is also defined as "to take and hand over to or leave for another: convey." Merriam-Webster.com. Merriam-Webster, n.d. Web. 16 Apr. 2018. Oxford Dictionary further defines "deliver" as to "bring and hand over (a letter, parcel, or goods) to the proper recipient or address." Oxforddictionaries.com, "Deliver" (04/26/18).

*Id.*, 18-52, pp. 7-8, 259 So. 3d at 522. The Fifth Circuit found that the plaintiff's petition was "delivered" when it was signed for by the court worker at the P.O. Box facility and in her possession on the last day of the prescriptive period. Thus, the requirements of filing within the one-year prescriptive period were met.

Likewise, the First Circuit interpreted "shall be delivered" as being received and stamped filed by the clerk of court in *Wells v. Farm Bureau Ins. Co.*, 19-0940, p. 4 (La. App. 1 Cir. 2/26/20), 300 So. 3d 9. There, the First Circuit opined:

> Because Mr. Wells' claim was prescribed on its face, Mr. Wells, as the party asserting a suspension or interruption of prescription, bears the burden of proof. *See Harris*, 243 So.3d at 578. The only evidence to show the date the original petition was delivered to the East Baton Rouge Parish Clerk of Court is the date stamp of February 5, 2019.
> As the record shows that the original document was not delivered to the Clerk of Court's office until fourteen days after the fax filing, a period containing only four legal holidays, Mr. Wells failed to comply with the requirement that the original identical document be delivered to the Clerk of Court within seven days, exclusive of legal holidays. Therefore, the fax filing has no force or effect. La. R.S. 15:850B & C.

*Id.*, 19-0940, p. 4, 300 So. 3d at 12.

We find that "shall be delivered" requires the clerk of court to be in possession of the original petition, as in *Clark* and *Wells*.[1] To apply *Hunter* and hold otherwise would invalidate the Legislature's revision to La. R.S. 13:850(B), as *Hunter* was superseded by the statutory revision. Further, if the Legislature intended to keep the same meaning of "forwarded to," as interpreted in *Hunter*, then there would have been no need to replace the term with "shall be delivered."

Now that we have interpreted La. R.S. 13:850(B) to require the original petition shall be in possession of the clerk of court within seven days, exclusive of legal holidays from the date of the fax-filing, we must determine whether Ms. Hawthorne's original petition was timely filed. "Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the

---

[1] Ms. Hawthorne avers that the clerk of court had constructive possession of the original petition once the document was mailed. We find this argument lacks merit, as the clerk of court has zero control of an item in control of the United States Postal Service.

day injury or damage is sustained." La. C.C. art. 3492. Ms. Hawthorne's injuries were allegedly sustained on October 10, 2018. Her Petition was fax-filed on October 9, 2019. The original Petition was mailed on October 15, 2019, via certified U.S. Mail.[2] The original Petition was not delivered to the clerk of court until October 30, 2019, which was after the seven days permitted by La. R.S. 13:850(B). As such, Ms. Hawthorne's fax-filing had no force or effect and did not interrupt prescription.[3] Ms. Hawthorne's claims prescribed before the filing of the original petition. Therefore, we find that the trial court did not err by granting Defendants' Exception of Prescription and affirm.

## *DECREE*

For the above-mentioned reasons, after a review of the *res nova* issue, we find that the revised phrase "shall be delivered" contained in La. R.S. 13:850 requires the clerk of court to have possession of the original petition. Applying those requirements to the present matter, Ms. Hawthorne's Petition was prescribed by the time the original petition was delivered to the clerk of court. Thus, we find that the trial court did not err by granting the Defendants' Exception of Prescription and affirm the trial court's judgment.

**AFFIRMED**

---

[2] This Court notes that Ms. Hawthorne did not mail the original petition until the sixth day following her fax-filed Petition.

[3] Ms. Hawthorne contends that *Stevenson v. Progressive Sec. Ins. Co.*, 19-00637 (La. 4/3/20), ___ So. 3d ___, 2020 WL 1671565, dictates that we find her filing was timely. In *Stevenson,* the clerk of court had an unpublished policy of turning off the fax machines at 4:30 p.m., resulting in the alteration and/or abrogation of the Louisiana legal prescriptive period. *Id*., 19-00637, pp. 6-8, ___ So. 3d at ___, 2020 WL 1671565, *4-5. The Louisiana Supreme Court held that this interference resulted in the interruption of prescription. *Id*., 19-00637, p. 8, ___ So. 3d at ___, 2020 WL 1671565, *5. There is no evidence in the present matter that the clerk of court caused the original petition to be filed late. We find *Stevenson* inapplicable.

10